B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>ABS-CBN Global Remittance, Inc. | **DEFENDANTS**<br>Nino Jefferson Lim |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Ori Katz (State Bar No. 209561) and Michael M. Lauter (State Bar No. 246048)<br>Sheppard Mullin Richter & Hampton LLP / Four Embarcadero Center, 17th Fl.<br>San Francisco, CA 94111<br>Tel: (415) 434-9100 | **ATTORNEYS** (If Known)<br>Stella Havkin (State Bar No. 134334)<br>Havkin & Shrago / 5950 Canoga Ave. #400<br>Woodland Hills, CA 91367<br>Tel: 818-999-1568 |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>■ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>■ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an action to determine the non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6). The basis of the debt is a state court judgment against the Debtor.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
■ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
■ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
■ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ■ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ $4,991,596.16 (plus additional applicable interest) |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Nino Jefferson Lim | BANKRUPTCY CASE NO.<br>2-18-bk:22877-BR | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Hon. Barry Russell | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. | |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Michael M. Lauter | | | |
| DATE<br>February 4, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Michael M. Lauter | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| *Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - _____ DIVISION**

| In re: | |
|---|---|
| | CASE NO.: |
| | CHAPTER: |
| | ADVERSARY NO.: |
| Debtor(s). | |
| Versus                    Plaintiff(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |
| Defendant(s) | |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

**Hearing Date:** _____    **Address:**
**Time:** _____     ☐ 255 East Temple Street, Los Angeles, CA 90012
**Courtroom:** _____    ☐ 3420 Twelfth Street, Riverside, CA 92501
☐ 411 West Fourth Street, Santa Ana, CA 92701
☐ 1415 State Street, Santa Barbara, CA 93101
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*    Page 1    **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

                                              **KATHLEEN J. CAMPBELL**
                                              **CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                  Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*           Page 2         **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2**.  **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3**.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
*Date*          *Printed Name*                                 *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                Page 3                        **F 7004-1.SUMMONS.ADV.PROC**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SEONG H. KIM, Cal. Bar No. 166604
shkim@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:    310.228.3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:   415-434-9100
Facsimile:    415-434-3947

Attorneys for Creditor and Plaintiff,
ABS-CBN Global Remittance, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NINO JEFFERSON LIM,<br><br>           Debtor. | Case No. 2:18-bk-22877-BR<br><br>Chapter 7<br><br>Adv. Proc. No. _____ |
| ABS-CBN GLOBAL REMITTANCE, INC.<br><br>           Plaintiff,<br><br>     v.<br><br>NINO JEFFERSON LIM,<br><br>           Defendant. | **ABS-CBN GLOBAL REMITTANCE INC.'S COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), AND 523(a)(6)** |

Case 2:19-ap-01039-BR    Doc 1    Filed 02/04/19    Entered 02/04/19 23:47:11    Desc
Main Document    Page 7 of 19

Creditor ABS-CBN Global Remittance, Inc. ("ABS-CBN"), plaintiff in this adversary proceeding, alleges against Debtor Nino Jefferson Lim as follows:

## INTRODUCTION

1. Lim orchestrated an elaborate scheme to defraud ABS-CBN out of millions of dollars. ABS-CBN operated a business similar to a Western Union that allows customers to wire money to friends and family in the Philippines. Lim operated a chain of grocery stores predominantly serving the Filipino community in California.

2. Lim introduced ABS-CBN to the management of his Cerritos store and suggested that the Cerritos location apply to become ABS-CBN's agent. In reality, Lim had his younger brother pose as the owner and president of the Cerritos location. Lim's younger brother had a different last name, which Lim exploited so that ABS-CBN would not become aware of Lim's connection to the fraud that was about to occur. Lim concealed that his sister actually operated the Cerritos location, concealed that she was a convicted felon, and concealed that her conviction was for defrauding another financial institution out of millions of dollars. Lim also concealed that his sister had already stolen funds from another money transfer company at the Cerritos location. Had ABS-CBN known any of these facts, it would have never entered into an agreement with Lim's businesses to serve as their agents and trusted fiduciaries.

3. What happened over the next year was appalling. Lim and his siblings defrauded ABS-CBN by placing fake money transfer orders, stealing bags of cash, and even sending ABS-CBN fake wire transfer slips and fake letters on what appeared to be official bank letterhead to keep the fraud going. Lim's brother and sister perpetrated the fraud while on the payroll of Lim's shell corporations.

4. Lim received money from the fraud. His siblings sent part of the funds to pay Lim through his shell companies. Other parts of ABS-CBN's embezzled funds were wired to Lim's mother in the Philippines. Lim's brother even admitted during deposition that he had discussed the embezzlement of ABS-CBN's funds with Lim.

-2-
SMRH:489378723    COMPLAINT FOR NON-DISCHARGEABILITY

5. ABS-CBN sued Lim and his co-conspirators in Los Angeles County Superior Court on April 5, 2017. During that lawsuit, ABS-CBN confirmed that Lim engaged in and benefited from the fraud. When caught, Lim settled with ABS-CBN. ABS-CBN settled in good faith, relying on Lim's promise that he had sufficient collateral to satisfy his settlement obligations. After a few months, however, the checks containing Lim's settlement payments bounced. Lim then voluntarily filed for bankruptcy to further his fraudulent scheme.

6. In the bankruptcy, ABS-CBN learned that Lim engaged in fraud against other financial institutions. The fraud followed a similar modus operandi as his other fraudulent schemes. The Court cannot permit Lim to get away with his fraud against ABS-CBN by using the bankruptcy court as another tool in his fraud. As explained below, ABS-CBN's claim is non-dischargeable and Lim must be held accountable.

## THE PARTIES

7. ABS-CBN is a California corporation with its principal place of business in Daly City, San Mateo County, California. At all relevant times, ABS-CBN was licensed to conduct the business of transferring money to persons and entities in the Philippines pursuant to its customers' instructions ("Money Transfers").

8. Lim, an individual, voluntarily filed a chapter 7 case in this District on October 31, 2018, commencing Case No. 2:18-bk-22877-BR before this Court (the "Bankruptcy Case"). At all relevant times herein, Lim through his wholly-owned and controlled entities, operated a chain of Filipino grocery stores predominantly in Southern California, and known as the Island Pacific Supermarkets.

9. Lim's wholly-owned entities acted as a statutory agent that collected the funds representing the Money Transfers, including at an Island Pacific Supermarket located at 20819 Currier Road, Walnut, Los Angeles County, California ("Island Pacific Cerritos"). As ABS-CBN's statutory agents, Lim's wholly-owned entities were fiduciaries of ABS-CBN.

## JURISDICTION AND VENUE

10. This adversary proceeding arises under title 11, or arises in or is related to the Bankruptcy Case, within the meaning of 28 U.S.C. § 1334(b). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b), 1334(b), (e), and Rule 5011-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Central District of California, including jurisdiction to enter a final judgment.

11. This is an adversary proceeding to determine the dischargeability of debts owed by the Debtor to ABS-CBN, and therefore is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I). To the extent necessary, ABS-CBN consents to entry of a final judgment by this Court.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

13. Lim is subject to the jurisdiction of this Court due to, among other things, his voluntary bankruptcy filing in this Court.

## GENERAL FACTUAL ALLEGATIONS

14. Lim commenced this bankruptcy case by filing a voluntary chapter 7 petition on October 11, 2018 (the "Petition Date"). ABS-CBN has filed a proof of claim as Claim No. 3 on the claims register in this case, in the amount of $4,991,596.00 (the "Proof of Claim"), based on a pre-petition judgment entered against Lim and others in Los Angeles County Superior Court on June 27, 2018 in the amount of $4,991,596.16 (the "Judgment"). A copy of the Proof of Claim, which includes the Judgment as an exhibit, is attached hereto as Exhibit A.

15. The fraudulent conduct by Lim, his relatives, and related entities that forms the basis of the Proof of Claim, is an elaborate scheme pursuant to which they defrauded ABS-CBN out of millions of dollars through the use of their status as statutory agents of the Money Transfers. This was done at the Island Pacific Supermarket chains owned by Lim, his relatives, and various shell entities created, owned and controlled by them (collectively, the "Lim Entities").

### A. NINO LIM AND HIS FAMILY HAVE DEFRAUDED OTHER FINANCIAL INSTITUTIONS USING SIMILAR FRAUDULENT SCHEMES

16. This is not the first time that Lim and members of his family have been accused of fraud. Those family members include his father (William Lim), siblings (Katherine Miave Lim Go and Nathanial Miave Jimenez), and other family members (the "Lim Family").

17. William Lim and Katherine Miave Lim Go are convicted felons. According to a press release from the United States Federal Bureau of Investigation ("FBI"), William Lim was involved in "several elaborate schemes that defrauded HSBC Business Credit (USA) out of approximately $46 million through a series of fraudulently obtained credit lines." (Exhibit B)

18. Court records show that William Lim pled guilty and, in September 2008, William Lim was sentenced to 57 months in prison and ordered to pay $34 million in restitution. (Exhibit C)

19. In the related civil lawsuit, HSBC Bank alleged that Nino Lim and his chain of Island Pacific Supermarkets were also used to perpetrate the fraudulent scheme. (Exhibit D) Similar to this lawsuit, HSBC alleged that William Lim and Nino Lim conspired with each other to borrow large sums of money based on false pretenses, using the Lim Family businesses and corporations.

20. On information and belief, once William Lim was caught, he gave Nino Lim his first Island Pacific and continued to use the Island Pacific entities to defrauding financial institutions as with HSBC.

21. Similarly, in 2005, Katherine Miave Lim Go (who, on information and belief, is the sister of Nino Lim), pled guilty to having defrauded Wells Fargo Bank to issue a line of credit to a company that she owned with her husband. (Exhibit E) According to the civil lawsuit filed by Wells Fargo Bank, N.A., these defendants also perpetrated this fraud by making misrepresentations (through statements and falsified documents) and diverting the banks funds. (Exhibit F) As a result of a criminal

investigation, Go was sentenced to time served and ordered to pay $7.6 million in restitution. (Exhibit G)  Wells Fargo eventually obtained a civil judgment against Go and others based on this fraudulent scheme.  (Exhibit H)

22. The fraud perpetrated against ABS-CBN also involved some of the same tactics (such as using false documents) as the William Lim's and Katherine Go's prior schemes.  The current scheme that Nino Lim used, and which caused his bankruptcy (getting large loans from banks and then defaulting on them which means that he had no intent to repay them), was operated through Island Pacific Cerritos.  The scheme is similar to the ones involving his father and sister, and follows the same modus operandi.

**B.  NINO LIM CONSPIRES AND DEFRAUDS ABS-CBN OUT OF MILLIONS**

23. At all relevant times, ABS-CBN was in the Money Transfer business.  Many Filipinos living in the United States send money back to their families and friends in the Philippines through ABS-CBN.  ABS-CBN was licensed to conduct these Money Transfers, including through authorized sellers ("Statutory Agent").  These Statutory Agents collect the money and instructions.

24. ABS-CBN advanced funds by transferring the funds to the recipients in the Philippines pursuant to the Statutory Agent's instructions before receiving the funds from the Statutory Agent.  The Statutory Agent was required to pay ABS-CBN for the transferred funds on the very next day by depositing funds in a Bank of America account designated by ABS-CBN.  Such deposit was required to occur on or before 3:00 p.m. Pacific Standard Time the business day following the Statutory Agent's receipt of funds for remittance.

25. The Statutory Agents were fiduciaries of ABS-CBN, especially because they were collecting money for ABS-CBN and had the fiduciary duty to deposit the money for ABS-CBN in the bank.

26. Lim introduced ABS-CBN to DL Global Foods Incorporated ("DL Global Foods"), and suggested that they work together on remittance transactions (and, therefore,

serve as ABS-CBN's fiduciary).  DL Global Foods was one of the shell companies owned by Lim and the Lim Family, and purportedly operated the Island Pacific Cerritos.

27. When he made the introduction, Lim failed to mention that the Cerritos location was purportedly run in secret by Go, a convicted felon (which fact Lim concealed from ABS-CBN), even though Go was his sister and Lim knew about the fraud.  Lim also failed to mention that Go had purportedly already stolen funds from another remittance company and wanted a replacement target.

28. Lim concealed that information and, instead, had his younger brother, Nathaniel Jimenez pose as Island Pacific Cerrito's owner and general manager.  Jimenez was in his early twenties, did not have much money to finance the Cerritos supermarket, and no meaningful experience running a supermarket.  On information and belief, however, what Jimenez did have was a clean criminal record.  By having Jimenez pose as the head of DL Global Foods, that company could avoid revealing Go's criminal judgment on the application to become ABS-CBN's Statutory Agent.

29. Deceived by these manipulations, on or about April 4, 2013, ABS-CBN entered into a Statutory Agent agreement (the "Agency Agreement") with DL Global Foods.  The officers and directors of DL Global Foods were nominally Nathanial Jimenez ( Lim's brother) and Katherine Go ( Lim's convicted sister).

30. On information and belief, however, Jimenez and Go were employed by Lim through his wholly-owned companies, merely reported to Lim, and ceded all managerial control of Island Pacific Cerritos to Lim, such that Lim was the person in control of Island Pacific Cerritos.  The connection between Island Pacific Cerritos and the rest of the chain and control that Lim exerted over the Cerritos location was significant.  For instance:

    a. Lim testified that he owned all of the Island Pacific entities.

    b. Jimenez testified that one of Lim's Island Pacific entities "guaranteed the lease obligations for the Cerritos store."

c. Lim's entities was in charge of office support, advertising, sales pricing, and a significant amount of product procurement for Island Pacific Cerritos.

d. Lim had Island Pacific Cerritos used the same accountant as his other Island Pacific entities.

e. Lim's had his Island Pacific entities use some of the same employees as his other Island Pacific entities.

f. Those shared employees included Jimenez ( Lim's younger brother), who testified that he reported directly to Lim about Island Pacific Cerritos' affairs because Jimenez had no prior experience serving as the head of a grocery store.

g. Payroll records reveal that Go (and her husband) were on the payroll of the Island Pacific entities that Lim admittedly owned.

h. Island Pacific Cerritos could not exist without Lim's oversight and management. Lim knew that Jimenez and Go had no money to finance the ownership and operation of Island Pacific Cerritos. For instance, Lim paid for the houses that Jimenez, Go, (and William Lim) lived in. Lim also testified that he repeatedly provided influxes of cash to Island Pacific Cerritos to keep it afloat.

i. Ultimately, Lim exerted his control to take over Island Pacific Cerritos and even used $300,000 located in a DL Global bank account (not their own) to secure the lease for Island Pacific Cerritos.

As the person who was truly in control of the entire Island Pacific chain, including Island Pacific Cerritos, ABS-CBN alleges that DL Global Foods (i.e., the entity that purportedly owned and operated Island Pacific Cerritos) is an insider of the Lim under Bankruptcy Code section 101(31).

## C. LIM AND OTHERS USED THE AGENCY AGREEMENT TO DEFRAUD ABS-CBN OUT OF MILLIONS

31. ABS-CBN faithfully performed under the Agency Agreement. DL Global Foods, however, failed to pay for the funds advanced by ABS-CBN. The initial underpayment was small, but eventually built up over time to millions of dollars.

32. When ABS-CBN demanded payment for the outstanding amount, ABS-CBN was provided with assurances that the payment would soon be forthcoming, that there was sufficient money, but the funds could not be immediately transferred to ABS-CBN for various reasons, including that those funds were frozen or impounded at the bank, that transfer could not be made because of a pending audit, that there was a need to change banks, etc.

33. ABS-CBN was provided with falsified documents purporting to show that there were sufficient funds. For example, ABS-CBN was sent text messages purportedly containing images of Bank of America deposit slip receipts indicating that deposits of funds had been made into ABS-CBN's bank account. ABS-CBN later discovered that these deposit slip receipts were fake and that such deposits were never made.

34. In actual and justifiable reliance on these and other misrepresentations, ABS-CBN continued to transfer funds as requested by DL Global Foods.

35. As the amount of unpaid receivables exceeded $2 million, ABS-CBN pressed for payment. In response, Jimenez (who was employed by Lim's entities and reported directly to Lim) provided a fake screenshot indicating that there was millions in the East West Bank account owned by DL Global Foods, as of December 31, 2014.

36. ABS-CBN also was provided a letter on East West Bank's letterhead, dated January 8, 2015, purportedly from Alfred Hwang, a District Manager of East West Bank. (Exhibit I) That letter stated that DL Global Foods had $1,986,717.50 on deposit, and that this sum will be transferred into an account that ABS-CBN opens with East West Bank. Defendants provided yet another letter on East West Bank's letterhead to ABS-CBN, dated January 9, 2015, purporting to be from Rebecca Tseng, a Branch Manager of East West

Bank, also indicating that there was $2,101,897.72 in DL Global Foods' account (of which $1,986,717.50 was on hold).  (Exhibit J)

37. Both of these letters were fake.  East West Bank later confirmed that the individuals who purportedly sent, issued and/or signed these assuring letters were not East West Bank employees.

38. As of February 6, 2015, millions remained due and unpaid to ABS-CBN.

39. Lim benefited from the fraud.  He knew that DL Global had no money to pay back its debt to ABS-CBN, yet ABS-CBN's money was used to pay Lim and/or one or more of his other Island Pacific entities.

40. The money that was stolen from ABS-CBN was also used to provide funds Lim's family members in the Philippines, including Lim's mother.

**D. THE ALTER EGO LAWSUIT AGAINST Lim AND ENTRY OF JUDGMENT**

41. ABS-CBN then filed suit against Lim and other members of the Lim Family and the Lim Entities on February 22, 2016, alleging several causes of action against Lim, Go, as well as their alter ego shell companies through which they operate their various Island Pacific Supermarkets (the "Alter Ego Lawsuit").

42. Once ABS-CBN uncovered evidence proving the fraud (including that Jimenez and Go were on Lim's payroll, etc.), Lim and the other defendants in the Alter Ego Lawsuit (the "Island Pacific Defendants") agreed to enter into a Confidential Settlement Agreement and Release ("Island Pacific Settlement Agreement") with ABS-CBN on May 24, 2017.[1]  The Island Pacific Defendants, including Lim, again lied to ABS-CBN that they wanted to help pay off the prior judgment "in full." Exhibit K at p. 1, Recital C (emphasis added).

---

[1] Although the parties had agreed that the Settlement Agreement is confidential, the parties "may make any disclosures they deem reasonably necessary: . . . (c) to enforce the terms of [the Settlement] Agreement." Exhibit K at ¶ 10.

43. The Island Pacific Defendants made payments under the Island Pacific Settlement Agreement from May 2017 to April 2018, paying a total of $461,536.88. However, in May 2018, the Island Pacific Defendants issued a stop payment notice on the settlement check sent for that month and ceased making further payments.

44. Pursuant to the terms of the Island Pacific Settlement Agreement, on July 27, 2018, the court presiding over the Alter Ego Lawsuit then entered the Judgment in favor of ABS-CBN and against Lim and the other Island Pacific Defendants that forms the basis of ABS-CBN's Proof of Claim in this case in the amount of $4,991,596.16.

45. In an attempt to avoid liability for ABS-CBNs' judgment from its underlying fraud case and liability to creditors, the Island Pacific Defendant entities agreed to an assignment of the benefit of creditors ("ABC"). They conveniently failed to provide ABS-CBN notice until after the ABC was purportedly complete.

46. The ABC of Lim's Island Pacific entities does not appear to be an arms-length transaction. On information and belief, the company that purportedly took over the Island Pacific stores (i.e., Abacus Business Capital Incorporated) ("ABC Inc.") in connection with the ABC, has connections to Lim. According to ABC Inc.'s Statement of Information dated April 16, 2018, M. Archibald Ranillo III served as ABC Inc.'s Chief Executive Officer, Chief Financial Officer, and secretary. (Exhibit L) On information and belief, Ranillo is Lim's father-in-law. Even after the ABC occurred, on information and belief, Lim continued to run or advise regarding the operations of the Island Pacific stores, many of which are still operational today.

47. ABS-CBN cannot permit Lim to use the bankruptcy process to avoid liability for the fraud underlying ABS-CBNs' judgment. As alleged below, Lim's debt to ABS-CBN is non-dischargeable.

## FIRST CLAIM FOR RELIEF

**(For Non-Dischargeability of Debt to ABS-CBN Pursuant to 11 U.S.C. § 523(a)(2)(A))**

48. ABS-CBN repeats and realleges the allegations in above paragraphs 1 through 47, inclusive, as though fully set forth herein.

49. Lim incurred the debt represented by the Judgment through fraud, and as a result the debt owed by Lim to ABS-CBN represented by the Proof of Claim is non-dischargeable under Bankruptcy Code section 523(a)(2)(A).

50. In particular, Lim and his relatives and related entities working in concert with Lim made repeated misrepresentations to ABS-CBN concerning the Money Transfers and their performance under the Agency Agreement will full knowledge of their falsity, and with intent to induce reliance.

51. Said reliance was justifiable given that Lim and the Lim Family and Lim Entities operated a well-known supermarket in the Filipino community.

52. The reliance resulted in damages – in particular Lim and the Lim Family and Lim Entities using their company's status as Statutory Agent under the Agency Agreement to defraud ABS-CBN out of millions of dollars.

## SECOND CLAIM FOR RELIEF

**(For Non-Dischargeability of Debt to ABS-CBN Pursuant to 11 U.S.C. § 523(a)(2)(B))**

53. ABS-CBN repeats and realleges the allegations in above paragraphs 1 through 52, inclusive, as though fully set forth herein.

54. DL Global Foods is an insider of the Debtor because the Debtor was at all relevant times a person in control of DL Global Foods.

55. Lim and the Lim Family and Lim Entities working in concert with him intentionally provided materially false and misleading statements in writing to ABS-CBN concerning the financial condition of DL Global Foods. The false and misleading statements in question consisted of the text messages, fake screenshot, and fake letters detailed above.

56. These writings were made with the intent to deceive ABS-CBN and further the fraudulent scheme of Lim and his co-conspirators.

57. ABS-CBN reasonably relied on these statements, as they were purportedly from East West Bank and created with the aid of an East West Bank employee to give them the appearance of legitimacy.

58. As a result, the debt owed by Lim to ABS-CBN is non-dischargeable under Bankruptcy Code section 523(a)(2)(B) as it is a debt for money obtained by Lim through the use of statements in writing that were materially false, that respected an insider's financial condition, on which the ABS-CBN reasonably relied, and that Lim and his co-conspirators made with the intent to deceive.

### THIRD CLAIM FOR RELIEF

**(For Non-Dischargeability of Debt to ABS-CBN Pursuant to 11 U.S.C. § 523(a)(4))**

59. ABS-CBN repeats and realleges the allegations in above paragraphs 1 through 58, inclusive, as though fully set forth herein.

60. Under the Agency Agreement, ABS-CBN entrusted the proceeds of the Money Transfers with Lim through his entity, DL Global Foods, which acted as the Statutory Agent. ABS-CBN did so because Lim's status as owner of a well-recognized supermarket chain in the Filipino community granted Lim a level of trust with both ABS-CBN and with individuals seeking to transfer money back to the Philippines.

61. Lim used DL Global Foods' status as Statutory Agent to steal millions of dollars from ABS-CBN, and did so with the intent of depriving ABS-CBN of said sum.

62. As a result, the debt owed by Lim to ABS-CBN is non-dischargeable under Bankruptcy Code section 523(a)(4) as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

### FOURTH CLAIM FOR RELIEF

**(For Non-Dischargeability of Debt to ABS-CBN Pursuant to 11 U.S.C. § 523(a)(6))**

63. ABS-CBN repeats and realleges the allegations in above paragraphs 1 through 62, inclusive, as though fully set forth herein.

64. Lim willfully and maliciously stole millions from ABS-CBN. As a result, the debt owed by Lim to ABS-CBN is non-dischargeable under Bankruptcy Code section 523(a)(6) as it is a debt for willful and malicious injury by the Debtor to another entity or to the property of another entity.

**PRAYER FOR RELIEF**

WHEREFORE, ABS-CBN prays for relief as follows:

65.  On the First, Second, Third, and Fourth Claims for Relief, an Order of this Court determining that the full amount of Lim's debts to the ABS-CBN, as such debts are set forth in the proof of claim filed by the ABS-CBN as Claim No. 3 on the claims register, is excepted from discharge and non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6).

66.  For such other and further relief as the Court deems just and equitable.

Dated: February 4, 2019        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:     /s/ *Michael M. Lauter*
          MICHAEL M. LAUTER

Attorneys for Creditor and Plaintiff,
ABS-CBN Global Remittance, Inc.